**John H. YEE**

v.

**The UNITED STATES.**

**No. 449–73.**

United States Court of Claims.

March 19, 1975.

As Amended on Denial of Rehearing May 30, 1975.

Rehearing En Banc Denied May 30, 1975.

Norman Lew, San Francisco, Cal., atty. of record, Paul S. Fong, San Francisco, Cal., of counsel, for plaintiff.

Kenneth J. Ingram, Dept. of Justice, Wash., D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before DAVIS, KASHIWA and KUNZIG, Judges.

KUNZIG, Judge.

The primary question before us in this military pay case is whether the failure of the Air Force Board for the Correction of Military Records (AFBCMR) to remove promotion pass overs from plaintiff's record was arbitrary and capricious.[1] A secondary question concerns

---

1. A removal of promotion pass overs and appropriate correction of plaintiff's record could reflect an adequate explanation of the unjust 5-year gap in plaintiff's Officer Effectiveness

the Air Force Accounting and Finance Center and whether it improperly offset civilian earnings in computing plaintiff's back pay and allowances after his erroneous discharge in 1965.

As to the primary issue, we hold the action of the AFBCMR to have been arbitrary and capricious. Secondly, we hold the Air Force Accounting and Finance Center to have been correct in offsetting civilian earnings from plaintiff's award of back pay.

### Facts

Plaintiff enlisted in the Air Force on October 9, 1954, and was appointed a Second Lieutenant on April 20, 1960. On April 20, 1964, plaintiff's automobile was involved in a head-on collision in which he suffered physical injury. Due to this injury, he was discharged from the Air Force on March 31, 1965 with severance pay in the grade of Captain.[2] Plaintiff appealed his discharge to the AFBCMR which initially denied his appeal, but subsequently recommended that he be reinstated to active duty. On July 6, 1970, over 5 years after his discharge, the Assistant Secretary of the Air Force held plaintiff's discharge constituted an *injustice*, directed that his records be corrected in accordance with the AFBCMR recommendation, and ordered plaintiff's reinstatement to the grade of Captain with appropriate back pay and allowances.

Prior to plaintiff's reinstatement, the Assistant Secretary of Defense directed the Assistant Secretaries of the military departments[3] to require deduction of interim civilian earnings from amounts found due members or former members of the uniformed services by reason of the correction of their military records.[4] Thus, when the Air Force Accounting and Finance Center computed the amount due plaintiff on September 2, 1970, plaintiff's civilian earnings of $26,-336.67 were offset from the $44,262.55 he would have received had he not been erroneously and unjustly discharged. Plaintiff did receive a net of $17,925.88.

On December 7, 1970, just four months after his reinstatement, plaintiff was considered by a Selection Board for promotion to the grade of Major, but was not selected. At that time, there was only one Officer Effectiveness Report (OER) concerning plaintiff's performance at the grade of Captain in his selection folder, and no adequate explanation of the 1965–1970 gap in his career. Fearful that his pass over would prevent him from being promoted in the future, plaintiff again appealed for relief to the AFBCMR. Again the AFBCMR found in plaintiff's favor. In voiding the December 7 pass over, the AFBCMR stated:

> There can be no argument with the selection board's decision that Captain Yee's record, as reflected in his selection folder, did not merit his selection under the best qualified method of selection. Nevertheless, we concur with him that his consideration was unjust because of the long period (more than 5 years) in which, through no fault of his, he received no OERs. Accordingly, we recommend that his record be corrected to show that he was not considered for promotion in FY 1971 [December 7, 1970]. [quoting the advisory

Reports. Alternatively, such a removal could change said record and correct the Air Force's failure to delay plaintiff's consideration by a Selection Board until an appropriate number of OERs could be accumulated.

2. He was first appointed to the grade of Captain on October 20, 1964.

3. On March 12, 1969.

4. On October 21, 1970, the Air Force changed AFR 31–3, which had been in effect since January 2, 1962. This regulation established procedures for making application, and considera-

tion of applications, for the correction of military records by the Secretary of the Air Force acting through the Air Force Board for the Correction of Military Records. The new provision, AFR 31–3, specifically stated in paragraph 26a that "earnings received from civilian employment during any period from which active duty pay and allowances are payable may be deducted from the settlement." This change reflected the policy established by the Assistant Secretary of Defense in his memorandum issued on March 12, 1969, and is similar to policy followed in civilian pay cases.

opinion of the Officer Promotion Branch, USAFMPC, dated 28 July 1971]

On August 23, 1971, the Assistant Secretary of the Air Force issued a directive to remove the pass over from plaintiff's file. The pass over was thus voided, but without an adequate explanation of the 5-year gap in plaintiff's selection folder, even though the AFBCMR knew his name would again be placed before a Selection Board in November, 1971.

Plaintiff subsequently was evaluated by the Selection Board on November 8, 1971. This Selection Board had access to only three OERs on plaintiff relating to his performance in the grade of Captain. (August 1, 1970 until October 8, 1971). In each of these OERs, plaintiff received an overall rating of "Exceptionally Fine." Again plaintiff was not selected for promotion; and again, on June 12, 1972, plaintiff appealed to the AFBCMR. On August 21, 1972, plaintiff once more was considered by a Selection Board for promotion to the grade of Major; but once again, he was passed over. On May 7, 1973, plaintiff amended his June 12, 1972 appeal to the AFBCMR to include this new pass over.

Having now been officially passed over twice by Selection Boards, plaintiff was required by law to be honorably discharged as an officer from the Air Force.[5] This discharge occurred on April 30, 1973. Plaintiff then immediately enlisted in the Regular Air Force on May 1, 1973 in the grade of Sergeant, in which position he still serves.

Plaintiff's appeal for relief to the AFBCMR asserted in essence that he was not afforded a complete remedy in 1971 when his December 7, 1970 pass over was voided. He maintained that this lack of remedial action directly contributed to his subsequent pass overs in 1971 and 1972 and consequent discharge

on April 30, 1973. On August 10, 1973, three months after plaintiff had been discharged as an officer and after a formal hearing had been conducted, the AFBCMR recommended that plaintiff's application for relief be denied. In reaching its conclusion, the AFBCMR found the failure of the Selection Boards to be adequately briefed or advised of the reasons for the voiding of plaintiff's December 7, 1970 pass over irrelevant. In addition, the AFBCMR gave little consideration to the gap in OERs in plaintiff's selection folder for the period 1965–1970.

More importantly, it is difficult to find in the opinion of the AFBCMR how much weight, if indeed any weight, was placed on the fact virtually all plaintiff's military problems stemmed from an original injustice *committed by the Air Force itself.*

Rather, the AFBCMR found that plaintiff's record of performance "speaks for itself" and does not "place him in a category that one would describe as quote 'selective material' unquote." On August 21, 1973, the Assistant Secretary of the Air Force adopted this recommendation and directed that plaintiff's application for relief be denied.

On November 20, 1973, plaintiff, claiming jurisdiction under 28 U.S.C. § 1491, brought suit in this court to recover and receive (1) back pay and allowances and other relief for his allegedly improper discharge in 1973 and (2) $26,336.67 for the alleged wrongful offset from his back pay and allowances award in 1970. For the reasons stated below, we hold for plaintiff on the discharge issue (while denying his request for promotion), and for defendant with regard to the offset of civilian pay.[6]

## I. *The 1973 Discharge Issue*

Plaintiff argues that the action of the AFBCMR in denying his request for re-

---

5. 10 U.S.C. §§ 8303(d) and 8846 (1970).

6. In paragraph 3 of his prayer for relief, plaintiff also sought to recover attorney's fees, costs, interest, and expenses connected with the correction of errors and injustices relative to his wrongful discharge on March 31, 1965

and to subsequent errors and injustices. However, it is well settled by case law, statute and regulation that such costs are not recoverable. *See* 28 U.S.C. §§ 2412 and 2516(a). Air Force Regulation 31–3, and Middleton v. United States, 175 Ct.Cl. 786, 795–96 (1966).

lief was arbitrary and capricious. He therefore seeks back pay and allowances equal to the grade of Major or, in the alternative, the grade of Captain from the date of his allegedly invalid discharge. As collateral relief, he also seeks reinstatement as a commissioned officer with correction of his military records to reflect the same.

■ Although this is a close case, on the facts presented in these cross-motions for summary judgment we agree that the AFBCMR's denial was arbitrary and capricious. By defendant's own admissions, plaintiff had been, on two separate occasions, the victim of injustices caused by the Air Force: first, when plaintiff was erroneously discharged in 1965; and second, when plaintiff's name was put before a Selection Board a mere four months after returning to active duty. What is not admitted, but is clear from the record, is that plaintiff continued to suffer from these two injustices because inadequate corrective action was taken to prevent recurring problems arising from the original error of the Air Force.

The primary factor which persuades us in plaintiff's favor is the failure of the Air Force at any time completely to correct the injustice caused by plaintiff's illegal discharge in 1965. The Air Force failed either to place an adequate explanation in plaintiff's record of the 5-year gap in OERs (which was admittedly caused by Air Force error) or to withhold plaintiff's name from submission to Selection Boards until sufficient time had elapsed for plaintiff to accumulate OERs. This failure prolonged the effect of the injustice until it ultimately led to plaintiff's 1973 discharge.

In essence, plaintiff's problems, since his 1970 reinstatement, stem mainly from his erroneous discharge in 1965. The AFBCMR, itself, when granting plaintiff's request in 1971 to void his December 7, 1970 pass over, envisioned the need for one or both of the above corrective measures when it stated, "[plaintiff's] consideration [for promotion] was unjust because of the long period (more than 5 years) in which, through no fault of his, he received no OERs."

We believe it would have been virtually impossible for any Selection Board to give proper consideration to plaintiff unless it had access to an adequate explanation of the 5-year gap caused by the Air Force or, in the alternative, sufficient time had elapsed for OERs to accumulate on which it could have made an informed judgment. Yet the AFBCMR, while recognizing the overall problem, merely voided plaintiff's December 7, 1970 pass over. The failure of the AFBCMR to take either additional step rendered its decision only a partial correction. And in this case, a partial correction was no correction at all.

Defendant argues that any injustice suffered by plaintiff was corrected when his December 7, 1970 pass over was voided. Defendant points out that plaintiff was granted the specific relief he requested, i. e., the removal of the pass over from his selection folder. While this characterization of plaintiff's request may be technically correct, we believe defendant, just as the AFBCMR, misses the true intent of plaintiff's appeal. While plaintiff may have only requested the December 7, 1970 pass over be removed from his selection folder, his implicit request was to have this obstacle removed so that he might be fairly considered for future promotion. And this obstacle could only be removed effectively if corrective action were taken with respect to the 5-year void in OERs caused by his illegal discharge in 1965. Thus, the removal of his December 7, 1970 pass over merely stayed, but did not correct, the injustice which, at least in part, caused the pass over. This removal was in itself an additional injustice for it not only failed to eliminate the cause of plaintiff's complaint, but virtually insured continuation of the same problem.

Had the Air Force either put in plaintiff's files an adequate explanation that his 5-year gap in OERs had been caused by an injustice committed by the Air Force itself, or delay plaintiff's evalua-

tion by Selection Boards until an appropriate number of OERs could have been accumulated, there can be little doubt this court might well have reached a far different conclusion in the instant case. But without either, we cannot agree with the AFBCMR when it said that plaintiff was given fair and just consideration for promotion by the November 8, 1971 and August 21, 1972 Selection Boards or that the absence of an adequate explanation in his files was irrelevant. For the foregoing reasons, we believe plaintiff could not have been given proper consideration by either Selection Board. As we stated in Weiss v. United States, 408 F.2d 416, 419, 187 Ct.Cl. 1, 7 (1969):

> [T]he selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and *must fairly portray the officer's record.* If a Service Secretary place [*sic*] before the Board an alleged officer's record filled with prejudicial information and *omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information,* then the record is not complete, and it is before the Selection Board in a way other than as the statute [10 U.S.C. § 5706] prescribes.[7] [emphasis supplied]

Here it is evident that plaintiff's record, through no fault of his own, was not complete.

■ The AFBCMR has the power, and the duty, to remove injustices and correct errors in servicemen's records. 10 U.S.C. § 1552 (1970) states:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of

civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

In this case, it is clear that the AFBCMR in 1971 only partially corrected and in 1973 totally failed to correct the injustice done to plaintiff. As this court has said before and reaffirms today, when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious. *See* Skaradowski v. United States, 471 F.2d 627, 200 Ct.Cl. 488 (1973); Duhon v. United States, 461 F.2d 1278, 198 Ct.Cl. 564 (1972).

In *Skaradowski, supra,* we emphatically stated:

> [T]he statutory charter of the boards for correction of military records (10 U.S.C. § 1552) provides for correction of *"any* military record" when considered necessary "to correct an error or *remove an injustice"* * * *. The court has absolutely no doubt that under this liberal standard, together with the admitted facts, the board was required to change plaintiff's records * * *. The board's contrary determination was arbitrary and capricious under the controlling standard as well as unsupported by substantial evidence and legally erroneous. The record compelled the board to correct plaintiff's records in order to "remove an injustice" against him. [emphasis original] *Id.* 628, 200 Ct.Cl. at 489.

The same rationale applies in the present case.[8]

■ Military correction boards "have an abiding moral sanction to determine, insofar as possible, the true nature of an

---

**7.** 10 U.S.C. § 5706 provides that a Selection Board be furnished "the records of all officers whose names are furnished to the board." As we stated in Weiss v. United States, 408 F.2d 416, 418, 187 Ct.Cl. 1, 5 (1969), "[t]he Congressional purpose would dictate that the 'record' required to be furnished under that section be complete and not misleading."

**8.** For a detailed discussion of the jurisdiction of this court in cases arising from military correction boards, *see* Glosser and Rosenberg, *Military Correction Boards: Administrative Process and Review by the United States Court of Claims,* 23 Am.U.L.Rev. 391 (1973).

alleged injustice and to take steps to grant thorough and fitting relief." *Duhon, supra,* 461 F.2d at 1281, 198 Ct.Cl. at 570, *quoting* Caddington v. United States, 178 F.Supp. 604, 607, 147 Ct.Cl. 629, 634 (1959). While it is clear that the AFBCMR saw the injustice of plaintiff's December 7, 1970 pass over, it is equally clear that, even with two separate reviews, it did not take sufficient steps to grant thorough and fitting relief. The AFBCMR knew in 1971 that plaintiff's name would again be submitted to a Selection Board on November 8, 1971, yet failed to insure that plaintiff's fate would not again be prejudiced by the same 5-year gap in his record. The Board further knew the consequences of its silence when, in 1973, it reviewed plaintiff's case after two subsequent pass overs and a forced discharge. Yet the AFBCMR still saw no reason to grant relief.

Thus, the abortive actions of two AFBCMRs did not succeed in removing an injustice, but rather in perpetuating one.

■ It follows that plaintiff, having been passed over twice by the invalid decisions of Selection Boards, was illegally discharged. Consequently, he is entitled to recover, but his recovery is limited to relief at the grade at which he was discharged. Public Law 92–415 [9] allows this court to fashion a complete remedy in cases where appropriate. In pertinent part, it states:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive

body or official with such direction as it may deem proper and just.

If we were merely to award back pay and allowances at the grade of Captain from the date of illegal discharge, plaintiff would not be made whole. But we are empowered to do more and choose to exercise this power. We therefore order the Secretary of the Air Force to remove from plaintiff's selection folder and from any other pertinent military records (1) plaintiff's November 8, 1971 pass over; (2) plaintiff's August 21, 1972 pass over; (3) plaintiff's April 30, 1973 discharge as an officer; and (4) plaintiff's May 1, 1973 enlistment. We direct the Secretary to reinstate plaintiff to the grade of Captain, effective April 30, 1973. And we further direct the Secretary to place in plaintiff's selection folder an adequate explanation of the 5-year gap from 1965–1970 and the 1973–1975 gap, making it clear that these gaps were not caused by any fault on the part of plaintiff. We urge the Secretary to consider the scheduling of possible future evaluations of plaintiff by Selection Boards consistent with the spirit reflected above.

A court-ordered promotion to the grade of Major has also been requested by plaintiff. This we reject. Courts generally are not in the "promotion business." Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Brenner v. United States, 202 Ct.Cl. 678 (1973), cert. denied, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974); Muldonian v. United States, 432 F.2d 443, 193 Ct.Cl. 99 (1970); Clinton v. United States, 423 F.2d 1367, 191 Ct.Cl. 604 (1970). In the present case, we cannot say that, even if the Selection Boards had been given a complete record, plaintiff would necessarily or even probably have been promoted. We can only say that plaintiff should not have been discharged.

To summarize, we hold the action of the AFBCMR in denying plaintiff's request for relief to have been arbitrary and capricious. We therefore award

---

9. Pub.L. No. 92–415, § 1, 86 Stat. 652 [codified at 28 U.S.C. § 1491 (Supp. II 1972)].

plaintiff back pay and allowances at the grade of Captain (while denying his request for promotion) and direct the Secretary of the Air Force to correct his records to reflect reinstatement consistent with the order of this court.

## II. The Offset Issue

■ In addition to relief from his forced discharge in 1973, plaintiff also seeks recovery of $26,336.67, the amount of civilian earnings offset when he was reinstated for the period from April 1, 1965 to July 5, 1970. Plaintiff alleges this deduction was erroneous since Air Force Regulation 31–3, effective October 1970, which authorizes the offsetting of civilian earnings was not in force and effect at the time the active duty pay accrued, nor was it in force and effect when the Air Force Accounting and Finance Center computed plaintiff's back pay and allowances. In support of this claim, plaintiff relies on our holding in Bates v. United States, 453 F.2d 1382, 197 Ct.Cl. 35 (1972).

In Bates, plaintiff sued to recover his civilian pay for the period June 17, 1968 to April 14, 1969. Bates' record was corrected on September 25, 1970, prior to revision of Air Force Regulation 31–3 permitting the offset of civilian earnings from back pay found due. This court disallowed the civilian pay offset in Bates. However, in reaching its decision, the Bates court was informed neither by plaintiff nor defendant of the March 12, 1969 directive issued by the Assistant Secretary of Defense [10] and the practice within the Air Force prior to 1970 consistent with this directive. Defendant belatedly attempted to bring this directive to the court's attention in its February 22, 1972 motion for rehear-

ing. However, the motion was denied without explanation on May 12, 1972. Had the Bates court been timely informed of the directive and Air Force practice, the result might well have been different. In any event, in the instant case, this court is fully cognizant of both the directive and Air Force practice prior to plaintiff's 1970 reinstatement and finds the offset on September 2, 1970 of plaintiff's civilian earnings for the period from April 1, 1965 to July 5, 1970 to be entirely proper and consistent with other precedents requiring the offset of civilian wages. See Middleton v. United States, 175 Ct.Cl. 786 (1966); Motto v. United States, 360 F.2d 643, 175 Ct.Cl. 862 (1966); Clackum v. United States, 161 Ct.Cl. 34 (1963).

We, therefore, hold that plaintiff's claim in re the offset issue has no merit.

\* \* \* \* \* \*

As to the 1973 discharge issue, plaintiff's motion for summary judgment is granted in part and denied in part, and defendant's cross-motion is granted in part and denied in part. Accordingly, plaintiff is entitled to recover, in part, on his claim, and judgment is entered to that effect with the amount of recovery to be determined pursuant to our Rule 131(c). The Secretary of the Air Force is ordered to reinstate plaintiff to the grade of Captain, effective April 30, 1973, and to correct plaintiff's applicable records consistent with this opinion, pursuant to Rule 147(c) of the Rules of this court.

As to the offset issue, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied, with the petition, as to this issue, dismissed.

10. This directive stated, in pertinent part, that "appropriate action should be taken to *require deduction* of interim civilian earnings" in cor-

rection board cases such as the case at bar. [emphasis supplied] For additional discussion, see text accompanying note 4 *supra*.