Steven E. **GIFFORD**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 774–87C.

United States Claims Court.

July 2, 1992.

Guy J. Ferrante, Falls Church, Va., for plaintiff.

John S. Groat, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, D.C., for defendant. Lt. Col. David S. Yastershock and Capt. Paul C. Clark, Dept. of the Air Force, of counsel.

## OPINION AND ORDER

WILKES C. ROBINSON: Judge.

This matter is before the court after a remand of the issue of the validity of a highly unfavorable Officer Effectiveness Report (OER) relating to plaintiff's rating period closing February 5, 1983, and issued by plaintiff's rating officials in 1983. The court's remand order, filed April 18, 1991, required a re-examination by the Air Force Board For Correction of Military Records (Board) of the validity of the questioned OER under the applicable regulations. In a decision dated October 17, 1991, cap-

tioned as an Addendum to Record of Proceedings (Report), the Board concluded that the evidence was insufficient to warrant a finding that the contested OER was erroneous or unjust. Thus, the Board reiterated its past majority finding and found, this time unanimously, that the OER was not invalid under applicable regulations and should not be purged from plaintiff's official records.

After a careful study of the briefs of the parties relating to this one remaining issue, the court concludes that plaintiff's evidence has clearly and convincingly shown that the action of the Board in refusing to purge this challenged OER was arbitrary and capricious, was not supported by substantial evidence, was contrary to law and regulation, and otherwise met the high standard of proof required of a plaintiff in seeking reversal of a Board action. Accordingly, we find that initially and upon remand the Board erred by its rejection of plaintiff's petition for relief with respect to the challenged OER. Accordingly, we will order that the challenged OER be purged from plaintiff's records. Our reasons follow.

## DISCUSSION

■ As a preliminary matter, it is abundantly clear to the court that upon remand defendant received an advisory opinion from Air Force counsel which disregarded the limited nature of the remand and, therefore, significantly exceeded the scope of the court's remand order. The advisory opinion, attached to the Board's findings, obviously attempted to re-argue issues already resolved in plaintiff's favor in this proceeding in this court's prior opinion. See Gifford v. United States, 23 Cl.Ct. 8 (1991). Accordingly, to the extent that the advisory opinion addresses issues already resolved by the court and unrelated to the specific issue of the validity of the OER, it will be disregarded by the court and will not be considered as part of the official court record in this proceeding.

■ This court's review of the lawfulness of the Board's determination regarding this OER is, of course, limited. As a general proposition, the responsibility for determining who is fit or unfit to serve in the armed services lies with the military, not with the judiciary. Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). We are not permitted to substitute our judgment for that of the military "when reasonable minds could reach differing conclusions." Sanders v. United States, 219 Ct.Cl. 285, 302, 594 F.2d 804, 814 (1979). Consequently, we cannot overturn a Correction Board decision unless there is clear and convincing evidence that the decision was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced." Heisig v. United States, 719 F.2d 1153, 1156 (Fed.Cir.1983); Clayton v. United States, 225 Ct.Cl. 593, 595 (1980). Substantial evidence is more than a scintilla. It is evidence that affords a reasonable basis for an inference of the fact in issue. Bauunternehmung v. United States, 10 Cl.Ct. 672, 676 (1986), aff'd, 820 F.2d 1208 (Fed. Cir.1987). However, if cogent and clearly convincing evidence shows that the challenged military action is without a rational basis, is seriously prejudicial to plaintiff, and has monetary consequences, the resultant "abuse of administrative discretion rises to the level of legal error which merits judicial relief." (Emphasis added.) Sanders v. United States, 219 Ct.Cl. 285, 301–02, 594 F.2d 804, 813; Cooper v. United States, 203 Ct.Cl. 300, 304–05 (1973). In such event, the strong but rebuttable presumption of the correct, lawful, and good faith discharge by military officials is overcome. Sanders, 594 F.2d at 813. Thus, notwithstanding the deference to be given military decisions in our "narrow" review of military discharge cases, Brown v. United States, 184 Ct.Cl. 501, 503, 396 F.2d 989, 991 (1968), we are authorized by applicable legal precedent to correct error when substantial evidence is lacking to support a decision, particularly when that decision is clearly wrong and totally unjust. Further, we have authority to make a plaintiff whole, i.e., grant all the relief that justice

requires. *Ray v. United States*, 197 Ct.Cl. 1, 453 F.2d 754 (1972).

In the Report the Board concluded:

We are unpersuaded that the comments by the additional rater and endorser violated the cited provisions of AFR 35–99 since they did not specifically refer to the applicants decertification, but rather to the applicants *actions*, which, *coincidentally*, resulted in the termination of his PRP certification. Such reporting is specifically sanctioned by the governing regulation. Accordingly, we agree with the earlier findings ... that the ratings and comments by the additional rater and endorser did not have their bases *solely* in the applicant's testimony and statements before the BOI and that the contested OER was not rendered in violation of AFR 36–10 and AFR 35–99.

■ The Board further found that there is no mention in the OER of the PRP decertification and that the OER "fully complies with the spirit and letter of AFR 35–99." Moreover, it found that AFR 35–99 explicitly recognizes that PRP decertification may be concomitant with other administrative or disciplinary actions, stemming from the same "act or problem."

Plaintiff contends that the additional rater, Lt. Col. Nelson, and the endorser, Col. McAndrews, who were not at Vandenberg Air Force Base when plaintiff was decertified, had no personal knowledge of the circumstances involving plaintiff's actions. Therefore, in downgrading plaintiff's OER, a downgrading that was totally contrary to Maj. Greathouse's comments and recommendations, they relied upon plaintiff's reported statements made during the discharge proceedings under AFR 36–2. Plaintiff concludes that this reliance violates AFR 36–10, paragraph 3–14a, which absolutely prohibits referring to, or even considering, information derived solely from incomplete administrative actions. Further, plaintiff contends that the AFR 36–2 action was terminated on May 25, 1983. Thus, plaintiff argues that under AFR 36–10, paragraph 3–14b, this termination amounted to a failure to implement successfully an intended personnel action,

and that their comments were inappropriate and warrant deletion of the OER.

Additionally, plaintiff maintains that the unfavorable comments and ratings were based upon an incident which transpired in another place and at another time—outside the rating period, thereby violating AFR 36–10, paragraphs 1–5 and 1–7a, which require that evaluations must be based on "an assessment of the ratee's performance and accomplishments during the rating period." Accordingly, plaintiff argues that although the cited regulations allow inclusion of incidents from the prior rating period if "they add significant information ... not previously reported," with respect to the challenged OER, the described unfavorable ratings were solely premised upon an out-of-date event which had already been recorded on a contemporary Training Report, and which had absolutely no bearing on applicant's performance at the MWR Division where plaintiff was assigned during the pertinent rating period.

Finally, plaintiff contends that Lt. Col. Nelson's and Col. McAndrews' unfavorable comments were inaccurate because they were not based upon their personal knowledge of plaintiff's duty performance in violation of AFR 36–10, paragraph 1–5, which for an accurate evaluation requires purposeful and "direct observation of the officer's behavior and performance of duty, achievements, efficiency, and morale of subordinates."

Despite defendant's protestations to the contrary, we are convinced that all of plaintiff's contentions have merit. The evidence is clear and convincing to this court that Lt. Col. Nelson and Col. McAndrews violated all of the above described regulations which are set forth with clarity and specificity in AFR 36–10. Maj. Greathouse, plaintiff's daily and immediate supervisor, was able to rate plaintiff based upon his direct, personal observation. Judging from his favorable review and comments, it cannot be disputed that Maj. Greathouse was very impressed with plaintiff's overall performance, effectiveness, and potential for promotion. He followed the dictates of AFR 36–10, and gave due consideration to

all of the specified evaluation criteria in the regulations. He also confined his evaluation to plaintiff's performance during the rating period at issue. However, the ratings given by Lt. Col. Nelson and Col. McAndrews were, as charged by plaintiff, grossly inaccurate with respect to plaintiff's performance during the rating period in question. Clearly, they had detailed information before them regarding plaintiff's high level of performance during the rating period *from Maj. Greathouse's report.* They took no issue with his determinations, based upon any alleged errors or factual inaccuracies in Maj. Greathouse's comments and conclusions. For these officers to have totally ignored Maj. Greathouse's comments without some very clear justification of record, was an egregious and indefensible violation of both the spirit and letter of the regulations governing the fair assessment of a subordinate's performance, and the proper preparation of OER's. Their actions in this regard rendered the challenged OER fatally defective.[1]

Moreover, the Board totally misconstrued its assignment upon remand. Perhaps, because of the unnecessarily broad scope of the advisory opinion, the Board became enmeshed in the advisory counsel's re-argument of the whole issue of whether plaintiff was properly decertified and discharged. However, those issues have already been determined by this court in its prior opinion. In that opinion, we pointed out that plaintiff's decertification may have been proper even if his statements of moral compunction were compelled by a regulation. The propriety of plaintiff's assignment as a missile officer and, therefore, his decertification and removal from training, are the kind of determinations that are best left to the discretion of the Secretary of the Air Force. Accordingly, the court is not attempting to substitute its judgment for that of the Air Force with respect to those decisions.

The fundamental issue upon which the court sought Board review is quite simple. We merely sought re-examination of whether there was other probative evidence of any kind in plaintiff's record which was properly considered by plaintiff's additional rater and endorser, thus reflecting an action or an inaction by plaintiff (for example, his commission of an illegal act or a failure to follow some valid order of a superior, or perhaps some act of insubordination), *other than plaintiff's mere expression of moral compunction,* upon which their unfavorable comments in the OER reasonably could be based and, if so, what specifically was that evidence. However, the Board's report is *totally devoid* of any such other evidence. To this court, it makes no difference whether their comments specifically referred to decertification. The undisputed facts show that the sole basis for their unfavorable comments came from their knowledge of plaintiff's statements of moral compunction. That knowledge could only have been gleaned from a reading of plaintiff's testimony before the Board of Inquiry (BOI) and related, but otherwise unidentified, "correspondence" in which plaintiff revealed his moral compunction about a first strike missile launch against civilian centers.

Moreover, it is abundantly clear to the court from the above cited language in its Report that the Board, at least rationally, could not have found any other *actions* by plaintiff upon which the additional rater and endorser could have actually relied, because such actions simply do not exist. In fact, the record contains not one action that, in our view, can possibly justify the conclusions reached by these officers as to plaintiff's ineffectiveness, deficiencies in his duty performance, or lack of qualifications and fitness for service as an officer in the Air Force. Based upon the record before the Board, plaintiff did not take illegal drugs, abuse alcohol, rob, steal, cheat, lie,

---

1. The challenged OER is highly significant because it could be used by a Promotion Board as a complete block to plaintiff's future advancement and promotion to higher rank in the Air Force. It was obviously *calculated* to be a fundamental basis for his discharge, a discharge that convincing evidence in this case has shown was preordained solely because of plaintiff's expression of moral compunction in accord with consistent, but misguided Air Force policy. *See Tilley v. United States,* 19 Cl.Ct. 33 (1989).

reject an assignment, evidence any degree of insubordination, or refuse to carry out any *lawful* order given him during his duties by a superior officer, whether before, during, or after the rating period in question. Patently, the foregoing actions are the very types of reprehensible conduct which, under the regulations, would not only support decertification, but concomitantly support inferior ratings in an OER and, possibly, discharge under the *appropriate* regulations. To the contrary, plaintiff's behavior and conduct was that of an officer and a gentlemen, and above reproach in every respect. His only "transgression"[2] was, in substance, to frankly state an inability, on purely moral grounds, to knowingly launch a first strike missile attack against civilian targets. Plaintiff's statements of moral compunction were not prohibited *acts*. Contrary to the expressed, but unsupported findings of the Board, they quite clearly were the *only* bases for the additional rater's and endorser's unfavorable comments in the challenged OER.

Further, this conclusion is substantiated by a careful reading of the language of the Board's Report which characterized plaintiff's "actions" as *coincidentally* resulting in plaintiff's decertification. Because those statements were the sole cited coincidental actions which resulted in decertification, it logically follows that there were no others. Also, given the conclusions in the Board's Report, if there were other actions of a derogatory nature, certainly the Board would not only have mentioned them, but rested its decision upon them in some measure. Of course it did not, in fact, could not do this, because such other actions did not exist.

The court again must emphasize that unlike Maj. Greathouse, plaintiff's immediate superior who gave him a very favorable rating, neither of the two officers, who we believe misjudged and misrated plaintiff for the period in question, actually had any *personal* knowledge of plaintiff's *actions* during the rating period. It is reasonable to conclude that Maj. Greathouse knew of plaintiff's expression of moral compunction and was, if anything, much more conversant with all of the correspondence and other items in plaintiff's file. With Maj. Greathouse, at least, plaintiff's statements did not require a condemnatory OER which, as we have sadly learned, would inevitably be used to discharge him from the Air Force.[3]

In short, the Board's Report contains no explanation of the wide difference in opinion between Maj. Greathouse's very favorable rating, which was based upon personal knowledge and observation and was confined to the rating period, and the highly unfavorable comments and ratings of Lt. Col. Nelson and Col. McAndrews, rating officials who personally "knew him not," which comments did not address plaintiff's performance during the rating period. Moreover, the Board's Report failed to clarify for this court its logic in relying entirely upon such unfavorable comments and ratings without any analysis whatsoever of the conflicting comments and ratings of Maj. Greathouse. The illogic and unfairness of this approach by the Board is, to say the least, shocking, particularly when Correction Boards have been given such a wide latitude to correct a wrong and right an injustice. Apparently, the Board, which elected to deny plaintiff's request for a hearing, made no conscientious effort to determine if there really was an inequity committed with respect to the OER. The comprehensive re-argument and recommendations of the advisory counsel may have played a role in that failure. Again, we state that the *only* evidence Lt. Col. Nelson and Col. McAndrews had before them when they, in effect, reversed Maj. Greathouse's favorable comments and rating, was plaintiff's "testimony" which, of course, related only to his statements of moral compunction. The Board's decision reveals that it gave not one iota of credibility or credence

---

**2.** This is clearly a misnomer, because his statements of moral compunction were compelled by a regulation, the validity of which is not in question either by plaintiff or this court.

**3.** Such statements, as a policy matter, have been uniformly and automatically equated to, and considered as, substandard performance of duty by the Air Force.

to the highly favorable rating from the one officer who was in a far better position than anyone else in the chain of command to accurately judge plaintiff's performance during the rating period. However, the Board dismissed his rating in favor of the two officers who only knew him through his file, and who went outside the rating period to find some basis to support a finding of substandard performance of duty, and ultimately plaintiff's unwarranted discharge.

Of course, we must give, and do give, deference to the decisions of the Boards. However, that deference does not require slavish adherence to their unsupported decisions. Thus, notwithstanding such deference, we may overrule Board decisions if not supported by substantial evidence. In this case, on this record, there is a total lack of justification for this particular OER, given the regulatory requirements in AFR 36–10 for issuance of lawful and valid OER's. Accordingly, we find that plaintiff's OER was issued in violation of applicable regulations which do give rise to procedural "rights" or entitlements in officers whose careers wholly depend upon being fairly and accurately rated under those regulations. Retention of the OER in plaintiff's file represents the imposition of a grave injustice. The Board's decision not to expunge it, on the record before it, was a violation of its mandate. *Muse v. United States*, 21 Cl.Ct. 592, 603 (1990), *citing Yee v. United States*, 206 Ct.Cl. 388, 397, 512 F.2d 1383, 1387 (1975). Accordingly, we find that the OER must be expunged from plaintiff's records.[4]

## CONCLUSION

The Board has been granted the statutory duty, along with a liberal mandate, to ascertain the true nature of an error or injustice, and to rectify it by according appropriate relief. *Sanders*, 207 Ct.Cl.

962, 521 F.2d 1406 (1975); *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975). Based upon the record as a whole, we find that plaintiff has shown by clear and convincing evidence that the Board's initial decision and its decision upon remand, not to expunge the challenged OER from plaintiff's record, was arbitrary and capricious, was not supported by substantial evidence, ignored procedural rights, and violated minimum concepts of fairness. *Murray v. United States*, 154 Ct.Cl. 185 (1961); *Clackum v. United States*, 148 Ct.Cl. 404, 296 F.2d 226 (1960).

Accordingly, we order that plaintiff's record be corrected forthwith in accordance with this Opinion and Order. Additionally, we order that plaintiff be restored to his former rank of 2Lt. retroactive to June 30, 1983, and that he shall receive all back pay to which he is entitled in that rank, after deducting therefrom all pay he has received from the date of his discharge and during his subsequent military service as a noncommissioned officer. The parties have agreed to jointly calculate the amount of back pay and other benefits to which plaintiff is entitled, consistent with this Opinion and Order, and the court's April 18, 1991 Opinion, from the date of plaintiff's involuntary discharge, June 30, 1983, to the last day of the month in which said calculations are made. The parties shall either file a motion for judgment or a joint status report within 30 days from the date of this Opinion and Order. The joint status report shall have attached thereto a summary of the parties' calculations.

IT IS SO ORDERED.

---

4. The question is not whether the OER "violated" Section 35–99 of the regulations. That regulation does not set forth the governing standards for preparation of OER's. However, on this record at least, the OER is in violation of AFR 36–10, which does govern the preparation of such OER's and what the raters must consider in performance of their rating functions.