LTC. Bobby L. BATES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–507C.

United States Court of Federal Claims.

Aug. 9, 1995.

Motion for Reconsideration
Denied Sept. 8, 1995.

Alan B. Sternstein, Rockville, MD, for plaintiff.

John S. Groat, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. LTC Nolon J. Benson, Jr., Captain Michael Smith, and Major Rafe R. Foster, Department of the Army, Office of the Judge Advocate General, of counsel.

**OPINION**

MEROW, Judge.

In this suit plaintiff Bobby L. Bates alleges that the defendant violated the applicable statutes and regulations by releasing him prematurely from active duty in the Army. This matter is now before the Court on dispositive motions filed by the parties. For the reasons discussed below, plaintiff's motion for summary judgment is granted and defendant's dispositive motions are denied.

### FACTS

Unless otherwise noted, the following facts are not in dispute. In November 1963, plaintiff entered the Army as a second lieutenant and remained on active duty until June 1980 when he was released as a major. Plaintiff then became a member of the Army Reserve and was promoted to the rank of lieutenant colonel in September 1982.

On April 10, 1990, the Army notified LTC. Bates that on May 26, 1990, he would complete the maximum number of years of service that a member of the Army Reserve. may serve in an active status. When an officer in the reserve grade of lieutenant colonel completes 28 years of service (computed by 10 U.S.C. § 3853 (1988)[1]) he or she must either be transferred to the Retired Reserve or be discharged. 10 U.S.C. § 3848(a) (1988).[2] Accordingly, the Army informed LTC. Bates that he could either request the transfer or he would be "automatically discharged." Amend.Compl. at Attach. C.

On April 26, 1990, LTC. Bates responded to the notification and requested an extension beyond his mandatory removal date from active service. His response also included the requisite form in which plaintiff elected transfer to the Retired Reserve if the extension were not approved.

The Army next communicated with LTC. Bates in July 1990 when he was ordered to active duty for 12 days of training. The tour was to begin on August 13, 1990, but was later rescheduled to begin on September 17. On September 28, the plaintiff was ordered to active duty (pursuant to 10 U.S.C. §§ 672(d), 682 (1988)[3]) for 139 days of service commencing October 1, 1990, and ending February 16, 1991. LTC. Bates served the tour in Saudi Arabia during Operations Desert Shield and Desert Storm as a safety officer attached to the 18th Airborne Corps.

In the course of his tour (on December 1, 1990) LTC. Bates accumulated 18 years of active service, i.e., 18 years of service on active duty. See 10 U.S.C. § 101(24) (1988) (definition of active service). At this juncture, LTC. Bates was assertedly within two years of qualifying for retired pay. See 10 U.S.C. § 3911 (Supp. IV 1988). When a member of a reserve component is on active duty (other than for training) and is within two years of becoming eligible for retired pay, he or she may not be involuntarily released from active duty before becoming eligible for that pay, unless the release is approved by the Secretary of the military department concerned. 10 U.S.C. § 1163(d) (1988).[4]

On January 12, 1991, LTC. Bates petitioned the Army to invoke section 1163(d) so that he could remain on active duty. The Army nevertheless released plaintiff from active duty on February 8, 1991. The Army explained that LTC. Bates had completed the

---

1. The incident in suit occurred in the 1990–1991 time frame. The Court will therefore reference the 1988 edition of the United States Code and its supplements (when applicable).

2. Section 3848(a) provides:
   Each officer in the reserve grade of first lieutenant, captain, major, or lieutenant colonel who is not a member of the Retired Reserve shall, 30 days after he completes 28 years of service computed under section 3853 of this title—(1) be transferred to the Retired Reserve, if he is qualified and applies therefor; or (2) if he is not qualified or does not apply therefor, be discharged from his reserve appointment.

3. Section 672(d) provides in pertinent part:
   At any time, an authority designated by the Secretary concerned may order a member of a reserve component under his jurisdiction to active duty, or retain him on active duty, with the consent of that member.
   Section 682 provides:

   Notwithstanding any other provision of law, a member of a reserve component who is on active duty other than for training may, under regulations prescribed by the Secretary concerned, be detailed or assigned to any duty authorized by law for members of the regular component of the armed force concerned.

4. Section 1163(d) provides in full:
   Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

maximum service proscribed by section 3848(a) on May 26, 1990, and repeated its directive that he elect transfer to the Retired Reserve or be discharged. The plaintiff again selected the Retired Reserve option and was subsequently assigned to the force effective April 29, 1991. This suit was filed on January 31, 1994, asserting Tucker Act jurisdiction (28 U.S.C. § 1491).

## DISCUSSION

■ The defendant's first argument for dismissal is that the Tucker Act "does not vest this Court with jurisdiction to grant federal employees the benefits or entitlement of a position to which they have not been appointed." Dfd's Renewed Motion to Dismiss at 4. The defendant insists that when LTC. Bates was directed to report for active duty in September 1990, the orders were "for a defined and fixed duration [of 139 days and] the Court may not alter the terms of those orders." Id.

The Court has jurisdiction to entertain this suit; the defendant has simply mischaracterized the nature of the claim. The plaintiff does not seek the "benefits or entitlement of a position" to which he has not been appointed nor does he seek to change the terms of his September 1990 orders. Rather, he maintains that, having accrued 18 years of active duty service, the Army wrongfully released him from active duty because he was entitled to the sanctuary provided by section 1163(d). LTC. Bates therefore seeks, *inter alia*, constructive active duty credit, back active duty and retirement pay, and the correction of his military record crediting active duty time and showing retirement.

■ In military pay cases involving the entry of a monetary judgment this court has jurisdiction to "provide an entire remedy." 28 U.S.C. § 1491(a)(2). The court may restore a service member "to office or position," place the individual in the "appropriate duty or retirement status," and correct "applicable [military] records." *Id.; see also Mitchell v. United States*, 930 F.2d 893, 896 (Fed.Cir.1991) (reviews this court's jurisdiction in military pay cases). Indeed, this court has awarded service members back pay (*e.g., Skinner v. United States*, 219 Ct.Cl.

322, 594 F.2d 824 (1979)); ordered individuals restored to their military positions (*e.g., Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975)); ordered the correction of military records (*e.g., Holley v. United States*, 32 Fed.Cl. 265 (1994)); ordered individuals placed in the correct retirement status (*e.g., Casey v. United States*, 8 Cl.Ct. 234 (1985)); and conferred constructive active duty credit (*e.g., Groves v. United States*, 47 F.3d 1140 (Fed.Cir.1995) (officer entitled to constructive active duty credit with corresponding back pay and allowances)).

■ The court's power to grant non-monetary relief is circumscribed, however. This relief must be incident of and collateral to the award of a money judgment. *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.), cert. denied, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988); *see also Austin v. United States*, 206 Ct.Cl. 719, 723, cert. denied, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975) (no power to grant affirmative non-monetary relief in military pay case unless it is tied and subordinate to a monetary award)). In sum, this court has the authority to provide the relief LTC. Bates requests if he is entitled to a money judgment and the associated duty credits and record corrections.

■ The defendant's second argument for dismissal of the complaint is that because section 3848(a) directed LTC. Bates's separation, he does not have a cognizable Tucker Act claim that his removal violated section 1163(d). The defendant explains that "[b]ecause LTC. Bates had previously passed his maximum service date established by" sections 3848 and 3853 on May 26, 1990, "he was no longer 'legally able' of being a member of the Reserve component" and thus could not invoke section 1163(d) and be retained on active duty. Dfd's Renewed Motion to Dismiss at 12.

It is concluded that plaintiff has presented a valid Tucker Act claim and is entitled to relief because the Army first violated section 3848(a) and then violated 1163(d). When LTC. Bates was ordered to active duty in September 1990, he was constructively a member of the Retired Reserve. While on

active duty he satisfied the elements of section 1163(d) thus entitling him to its sanctuary.

At bottom, the defendant's argument for dismissal confuses the terms "active duty" and "active status" and confuses LTC. Bates's status in the Army. Active duty describes the day-to-day functions performed by a regular or reserve member of the armed forces. *Jamerson v. United States*, 185 Ct. Cl. 471, 476–477, 401 F.2d 808, 811 (1968); *see also* 10 U.S.C. § 101(22) (1988) (definition of active duty). An individual on active duty has a full-time job in the military. *Id.* Active status describes the category of reserve officers who are eligible for promotion. *Id.*; *see also* 10 U.S.C. § 8360(a). While a regular officer is either on active duty or retired, a reserve officer can be in an active status, an inactive status, or a retired status. *Id.*; *see also* 10 U.S.C. § 101(25) (1988) (definition of active status). A reservist need not be on active duty to receive a promotion; but he or she must be in an active status. *Id.* A retired reservist may serve on active duty; but by definition he or she cannot be in an active status. *Id.*

The defendant contends that the plaintiff remained in an active status in the Individual Ready Reserve until his transfer to the Retired Reserve on April 29, 1991. This conclusion would defeat section 3848(a) which directs that an effected officer "shall, 30 days after he completes 28 years of service" be transferred to the Retired Reserve or discharged.[5] Moreover, the defendant's construction of the statute would allow the Army to retain an officer in an active status until it performs an administrative function. Indeed, the defendant has used this construction of the statute to sanction the retention of LTC. Bates in an active status for nearly 29 years,[6] and to argue that LTC. Bates is not entitled to section 1163(d) protection.

Section 3848(a) compelled the removal of LTC. Bates from active status on May 26, 1990, and compelled his transfer to inactive status—the Retired Reserve—30 days thereafter. In these circumstances, section 3848(a) compels a correction of plaintiff's military records to show that he was transferred to the Retired Reserve effective May 26, 1990, the date mandated by Congress.

Neither section 3848 nor any other provision of title 10 then prohibited his subsequent active duty assignment in September 1990 as a retired reservist. *See Jamerson*, 185 Ct.Cl. at 478, 401 F.2d at 811. Indeed, sections 672(d) and 682 (used to call-up LTC. Bates in September 1990) expressly authorized the Secretary of the Army to order a member of a reserve component to active duty at any time, albeit with the member's consent.[7] In sum, LTC. Bates was not returned to active status in September 1990. Rather, to reflect compliance with section 3848(a), he was a retired reservist lawfully called to active duty.

In January 1991, LTC. Bates was qualified for the protection of section 1163(d) because he had satisfied its elements. First, LTC. Bates was a member of the Retired Reserve, a reserve component.[8] Second, in January 1991 he was on active duty (other than for training). LTC. Bates's orders were for a "temporary tour of active duty" to pursue "special work." Amend.Compl. at Attach. F. Third, in January 1991 LTC. Bates was within two years of becoming eligible for retired pay under a purely military retirement system. The Army nevertheless released the plaintiff from active duty (involuntarily) before he became eligible for retired pay and without the Secretary's approval.

It is important to emphasize that section 1163(d) was enacted to protect service members in plaintiff's position. As noted earlier,

---

**5.** Title 10 commands that "shall" be construed in an "imperative sense." 10 U.S.C. § 101(28) (1988).

**6.** The Army "formally" transferred plaintiff to the Retired Reserve nearly one year after he had completed 28 years of service.

**7.** See note 3, *supra.*

**8.** The Army Reserve includes all Reserves of the Army who are not members of the Army National Guard of the United States. 10 U.S.C. § 3076 (1988) (emphasis added). The Retired Reserve includes Reserves who have been transferred to it upon their request; retain their status as Reserves; and are otherwise qualified. *Id.* at § 274(2).

full-time regular and reserve officers may retire from the military with substantial retirement pay when they complete 20 or more years of service. Reservists who earn 20 or more years of qualifying service—combining the active duty years with years of qualifying reserve time—are also eligible for retired pay. *See Wilson v. United States,* 917 F.2d 529, 532 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991) (citing 10 U.S.C. §§ 1331, 1333, 1401 (1988)). That compensation, however, is less generous because it cannot be drawn until the reservist turns 60. Moreover, it is only a fraction of that paid to the career officer who retires with 20 or more years of full-time service. *Id.*

Congress enacted section 1163 to induce reservists to remain on active duty thereby reducing unwanted attrition and its attendant costs to the Government. *Id.* Congress sought to accomplish its objective by guaranteeing reservists who completed 18 years of active service that they would get their "twenty" and the more generous compensation package. *Id.*

In sum, the Army permitted LTC. Bates to accumulate 18 years of full-time active duty. Consequently, absent approval by the Secretary, it could not terminate LTC. Bates's active duty assignment on February 8, 1991, because it denied him the opportunity to complete his 20 years and obtain the more desirable military retirement pay. *See id.* at 533.

Finally, the defendant has referred to certain Army regulations in support of its position that the complaint be dismissed. However, AR 135–210 is not applicable because it regulates soldiers ordered to active duty during peacetime. *See* AR 135–210 ¶ 1–1a. LTC. Bates was ordered to active duty for "MOB [mobilization] support", Amend. Compl. at Attach. F, which is governed by AR 601–10. *See* AR 601–10, ¶ 1–1a (regulations governing recall of "retired personnel in time of mobilization, war, or national emergency"). AR 635–100 is also not applicable because LTC. Bates, as a member of the Retired Reserve, was excepted from the active duty list. *See* 10 U.S.C. §§ 101(37), 641(4); AR 635–100 ¶ 3–1a.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Defendant's dispositive motions are **DENIED;**

(2) Plaintiff's cross motion for summary judgment is **ALLOWED** with respect to defendant's liability to plaintiff for active duty pay from February 8, 1991 through the date twenty years of such service was attained (less outside earnings, if any) plus appropriate retired pay thereafter;

(3) Counsel shall confer and determine the amount of the final judgment to be entered pursuant to (2) and provide this information by filing a status report with the court on or before September 15, 1995;

(4) Should agreement as to the judgment not be resolved as contemplated in (3), a status report(s) shall then be filed by September 15, 1995, indicating the nature of the further proceedings proposed to develop the information required;

(5) As an incident of and collateral to the forthcoming entry of a final monetary judgment in this matter, plaintiff's records shall be corrected to show plaintiff's transfer to the Retired Reserve, effective May 26, 1990, his active duty service thereafter in that status, and his appropriate retired status thereafter.

## OPINION ON RECONSIDERATION

### Sept. 8, 1995

The defendant moves for reconsideration of the Court's August 9, 1995, opinion. In that opinion the Court concluded that the Army had violated 10 U.S.C. § 1163(d) when it released the plaintiff from active duty before he became eligible for retired pay and without obtaining the Secretary of the Army's approval. LTC. Bates was awarded active duty and retired pay and, incident of and collateral to the entry of this monetary judgment, it was ordered that his records be corrected to show the appropriate military service.

The defendant proffers two arguments for reconsideration based on the following para-

graph (slip. op. at 8 (August 9, 1995)) in the opinion:

> [T]he defendant has referred to certain Army regulations in support of its position that the complaint be dismissed. However, AR 135–210 is not applicable because it regulates soldiers ordered to active duty during peacetime. *See* AR 135–210 ¶ 1–1a. LTC. Bates was ordered to active duty for "MOB [mobilization] support," Amend. Compl. at Attach. F, which is governed by AR 601–10. *See* AR 601–10 ¶ 1–1a (regulations governing recall of "retired personnel in time of mobilization, war, or national emergency"). AR 635–100 is also not applicable because LTC. Bates, as a member of the Retired Reserve, was excepted from the active duty list. *See* 10 U.S.C. §§ 101(37), 641(4); AR 635–100 ¶ 3–1a.

The defendant first argues that the Court erroneously held that AR 135–210 is not applicable to LTC. Bates. The defendant asserts that, because the United States was not at war in September 1990, AR 135–210 is the controlling regulation because it "prescribes policies, responsibilities, and procedures for ordering individual soldiers of the . . . U.S. Army Reserve (USAR) to active duty (AD) during peacetime." AR 135–210, ¶ 1–1a.

It is concluded that the analysis of AR 135–210 and AR 601–10 in the August 9, 1995 opinion is correct. The later regulation explicitly governs the recall of retired personnel during mobilizations. AR 601–10, ¶ 1–1a. In September 1990, LTC. Bates was ordered to active duty for "MOB [mobilization] support." Amend.Compl. at Attach. F. The former regulation, however, is explicitly limited to "peacetime." The defendant maintains that this holding constitutes a finding that the United States was at war. The analysis merely recited LTC. Bates's orders and applied AR 601–10 because it specifically regulates the mobilization of retired reservists. Furthermore, "mobilization" does not necessarily involve a state of war because it is "any expansion of the Army that may require the return to active duty of any member previously retired." AR 601–10 at 14.

1. *See* Dfd's Motion for Reconsideration at 2 n. 1.

At bottom, even if AR 135–210 applied to LTC. Bates,[1] the Army could not declare his temporary tour of active duty (TTAD) void for purposes of computing his section 1163(d) eligibility. Two statutes (10 U.S.C. §§ 672(d), 682 (1988)) and one regulation (AR 601–10) authorized his service. Consequently, the Army wrongfully terminated LTC. Bates's active duty assignment on February 9, 1991, because it denied him the opportunity to complete 20 years of active duty service and obtain more desirable military retirement pay. *See* slip. op. at 8 (August 9, 1995); *see also* 10 U.S.C. § 1163(d).

The defendant's second argument for reconsideration is that the Court erroneously concluded that AR 635–100 does not apply to officers in the Retired Reserve who have been excepted from the active duty list. The defendant asserts that AR 635–100, ¶ 3–30a(2)(c) mandated plaintiff's release from active duty 30 days after he completed 28 years of service, *i.e.,* 30 days after May 26, 1990. Therefore, the defendant continues, the Army correctly refused to credit plaintiff's service between October 1, 1990, and February 8, 1991, toward the protections of section 1163(d).

It is conceded that AR 635–100 affects retired reservists who are not on the active duty list. *See* AR 635–100 at 1 ("regulation is applicable to all Regular Army officer personnel and Reserve component officer personnel on active duty"). Nevertheless, the provisions defendant relies upon do not govern LTC. Bates. Chapter 3 establishes "the criteria, procedures, and authority for the release of Reserve officers on the active duty list from active duty or active duty for training of officers of the Reserve components, including Active Guard Reserve." AR 635–100, ¶ 3–1a. Between October 1990 and February 1991, LTC. Bates was not a Reserve officer on the active duty list; he was an officer in the Retired Reserve on active duty. *See* slip. op. at 7 (August 9, 1995).

Additionally, ¶ 3–30a(2)(c) did not prohibit LTC. Bates's TTAD in Saudi Arabia and did not prohibit the Army from crediting this service toward the protections of section

1163(d). Rather, the paragraph merely implements 10 U.S.C. § 3848(a) (1988). Again, when LTC. Bates reported for duty in October 1990, he was constructively a member of the Retired Reserve because section 3848(a) so mandated this status. *See* slip op. at 5 (August 9, 1995). During this tour, which was expressly authorized by 10 U.S.C. §§ 672(d) and 682 (1988), LTC. Bates satisfied the elements of section 1163(d) thus entitling him to its sanctuary.

Accordingly, as defendant has set forth no valid basis for reconsideration, it is **ORDERED** that defendant's motion for reconsideration is **DENIED.**[2]

---

**2.** The court has informally been notified by counsel that a motion to stay further proceedings on this reconsideration matter may be filed as part of possible settlement discussions. No reason is apparent why a stay of reconsideration proceedings would be appropriate for this purpose. Any settlement now reached should not be premised upon a withdrawal of the August 9, 1995, opinion. In connection with providing counsel a status report as to the time a ruling was contemplated, counsel were notified by a letter dated July 7, 1995, as follows (in part):

It is assumed that counsel have exhausted settlement possibilities at this time.

Given the work on this matter to date, it is likely that a decision will be filed in the near future. Any settlement thereafter should not be premised upon a withdrawal of the decision. *See U.S. Bancorp Mortg. Co. v. Bonner Mall,* — U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

Accordingly, this reconsideration matter has now been duly concluded.