Robert L. MOSS, Pro Se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–708 C.

United States Court of Federal Claims.

Nov. 8, 2011.

612

Robert L. Moss, Lisman, AL, pro se.

Michael P. Goodman, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Martin F. Hockey, Jr., Assistant Director, Washington, DC, for defendant. Captain John S. Goehring, United States Air Force, Joint Base Andrews, MD, and David F. Brash, United States Air Force Litigation Division, Arlington, VA, of counsel.

## OPINION

BUSH, Judge.

This military retirement pay dispute is before the court on defendant's motion for partial dismissal, under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), and on defendant's motion for judgment on the administrative record, under RCFC 52.1.[1] These motions have been fully briefed, and oral argument was neither requested by the

---

1. Although plaintiff's response brief was titled "Plaintiff's Cross–Motion in Response to Defendant's Partial Motion to Dismiss and Motion for Judgment on the Administrative Record," plaintiff explained the purpose of his "cross-motion" filed April 6, 2011 in this manner: "Plaintiff . . . respectfully submit[s] this response requesting the court deny Defendant's Motion[s]." Pl.'s Resp. at 1. Thus, despite its title, plaintiff's filing has been considered to be plaintiff's response brief. The response brief also contains a distinct request for the court to order defendant "to produce and provide a complete record of the SSB calculations." Id. at 7.

parties nor deemed necessary by the court. For the reasons stated below, defendant's motions are granted.

## BACKGROUND[2]

### I. Retirement Pay Dispute

Plaintiff Robert L. Moss enlisted in the active duty United States Air Force in 1962, and served in the Air Force, Air National Guard or United States Air Force Reserve (collectively, Air Force or service) until 1992. Pl.'s Resp. at 1. Mr. Moss voluntarily separated from the Air Force on June 5, 1992 at the age of forty-seven, and accepted a Special Separation Benefit (SSB) for voluntary departure from the service in the amount of $101,896.78. Def.'s Mot. at 4; AR–I at 54. The SSB was to be recouped in its entirety by the service if Mr. Moss became eligible for Reserve retirement pay at age sixty. AR–I at 22, 54. The SSB agreement notified Mr. Moss that the SSB of $101,896.78 would be subject to federal and state income tax withholding. *Id.* at 54. Indeed, $20,379.35 was withheld from the SSB for federal income tax, and $4075.87 was withheld for state income tax. Orig. Compl. ¶ 1; AR–III at 59–60.

Mr. Moss asserts that there is a discrepancy between the SSB total amount he agreed to and the SSB payment he received in 1992, even when the income tax withholding amounts were taken into consideration. According to his calculations, he should have received a net amount of $77,441.56, but only received $71,876.38. Orig. Compl. ¶ 1. Mr. Moss suggests that the payment of $71,876.38 reflects an underpayment of his SSB, perhaps in the amount of $5565.18. *Id.;* *see also* February 16, 2011 Joint Status Report (JSR), at 2–3, 6–8. The court shall refer to this particular allegation of error as the SSB underpayment claim.

Before becoming eligible for military retirement pay, Mr. Moss applied for disability benefits from the United States Department of Veterans Affairs (DVA) on July 27, 2004. Pl.'s Resp. at 2. His initial claim was denied. *Id.* Mr. Moss was placed on the military retired list on November 19, 2004, and was notified in December 2004 that his retirement pay of $2943 per month would be reduced to $404.31 per month in order to recoup his SSB. *Id.;* AR–I at 41.

The record before the court shows that Mr. Moss repeatedly contested certain aspects of his SSB agreement. For example, he is noted to have sought relief from the Air Force Board for Correction of Military Records (AFBCMR or Board) before November 1, 1994, where he "question[ed] [the requirement for] repayment of the SSB upon receiving his retirement pay." *See* AR–I at 23. Apparently, however, the Board did not relieve him of his SSB repayment obligation. Mr. Moss also raised the issue of the repayment of his SSB in a letter to the service sent October 20, 2004; the answer provided by the Defense Finance Accounting Service (DFAS) was that the SSB recoupment was required by federal law. AR–I at 41. Once recoupment had begun, Mr. Moss applied for relief from the AFBCMR in December 2004, noting that eighty-seven percent of his monthly military retirement pay was being recouped to pay his SSB obligation. AR–I at 12–13. It is unclear from the record whether plaintiff received an official rejection of his request at that time, but the AFBCMR eventually addressed his concerns regarding the SSB recoupment and formally rejected his request for relief in late 2010. AR–I at 10–11; AR–III at 4.

In the early years of his military retirement, Mr. Moss continued to pursue disability benefits from DVA and was granted a ten percent disability rating in May 2007. AR–I at 119–20. His disability benefits were made retroactive to July 2004. *Id.* at 120. No SSB recoupment, however, was drawn from his disability benefits. Pl.'s Resp. at 3.

---

**2.** All references to the complaint are to the amended complaint filed April 7, 2010, unless otherwise noted. The facts presented in the complaint are undisputed for the purpose of resolving defendant's motion to dismiss. Def.'s Mot. at 3 n. 1. Background facts are also drawn from the parties' filings and from the three-volume administrative record compiled by the government (AR–I, AR–II, AR–III). Following the practice of the parties, this opinion refers to "plaintiff" or "Mr. Moss." No disregard for plaintiff's military service or his achievement of the rank of major is intended.

Plaintiff asserts that the government's SSB recoupment efforts between 2004 and 2007 should have been directed toward his disability benefits, not to his military retirement benefits. *See* Compl. ¶ 2; Orig. Compl. ¶ 2; Pl.'s Resp. at 3. The court shall refer to this particular allegation of error as the misdirected SSB recoupment claim.

Mr. Moss states that he eventually chose to accelerate the recoupment of his SSB obligation by borrowing money from his credit union and sending a large payment to DFAS, in order to receive the full amount of his monthly military retirement benefit from that point forward. Compl. ¶ 3. Thus, on August 15, 2007, his credit union sent a check in the amount of $16,692.91 to DFAS. *Id.* It is undisputed that the amount of this check exceeded plaintiff's remaining SSB obligation. DFAS returned a $3387.49 credit to plaintiff's credit union account. *Id.;* AR–I at 78. Mr. Moss claims that the credit received was incorrect, and that DFAS should have refunded him $5284.28, not $3387.49. Compl. ¶ 3. The court shall refer to this particular allegation of error as the SSB recoupment overpayment refund claim.

## II. Procedure

The complaint presents plaintiff's claims in four paragraphs, along with a fifth paragraph that is in essence a prayer for relief. The first paragraph contains the SSB underpayment claim, and perhaps other claims: "[DFAS] made ... miscalculations in accounting, and unjustifiable deductions [inflating the amount of SSB recouped beginning in 2004]." Compl. ¶ 1. The second paragraph contains the misdirected SSB recoupment claim, alleging that the "failure of [DFAS] and [DVA] to properly ... dispos[e] of Plaintiff's retirement pay and disability pay" harmed plaintiff. *Id.* ¶ 2. The third paragraph states plaintiff's SSB recoupment overpayment refund claim: "[T]he amount remitted [by plaintiff] was in excess of the current [SSB] balance due, and a credit in the amount of $5284.28 should have been issued, instead of the $3387.49 that was issued." *Id.* ¶ 3. The fourth paragraph addresses the amount of the SSB that was withheld for state income tax in 1992 and

that was recouped beginning in 2004, and asserts that "Defendant violated Plaintiff's 5th and 14th amendment rights by deducting from Plaintiff['s] retirement pay an amount to replace an amount previously withheld to pay State income tax." *Id.* ¶ 4. The court shall refer to this claim as the improper state tax recoupment claim.

The prayer for relief summarizes plaintiff's suit, and states that "Defendant has ... recouped over and above the amount actually received by the Plaintiff [and] Plaintiff has received absolutely zero from this process." Compl. ¶ 5. Plaintiff requests "$25,000.00 in compensatory damages, and $250,000.00 in general and special damages." *Id.* Mr. Moss also requests costs and fees for the action brought in this court.

Mr. Moss also sought relief from the AFBCMR regarding his SSB obligation and the recoupment of the SSB from his military retirement pay, as previously noted. He again petitioned the AFBCMR in 2009, a few months before filing his claims in this court. *See* Pl.'s Mot. to Stay/Remand, filed June 17, 2010, Att. 1. Before ruling on defendant's dispositive motions, the court remanded plaintiff's claims to the AFBCMR, as requested by the parties. The decision of the AFBCMR is now before the court in the third volume of the administrative record, and defendant requests judgment on that record for one of plaintiff's claims.

Mr. Moss also contacted his senator regarding the state tax withholding issue and the SSB recoupment issue. *See* AR–I at 72–73. In addition, plaintiff contacted DFAS several times to discuss his SSB recoupment situation. *See, e.g., id.* at 98–99. Mr. Moss also contacted DVA and questioned whether DVA had properly administered his disability benefits in the context of the SSB recoupment. *See* AR–III at 48–50. None of these efforts appear to have convinced DFAS or the Air Force that Mr. Moss should be relieved of his SSB repayment obligation, or that he should be paid any of the monies he now alleges are owed to him by the government. Plaintiff notes that DVA is currently considering his misdirected SSB recoupment claim, among other matters. Pl.'s Reply at 9, Ex. 1.

## DISCUSSION

### I. Standards of Review

#### A. *Pro Se* Litigants

The court acknowledges that Mr. Moss is proceeding *pro se,* and is therefore "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.,* 828 F.2d 1555, 1558 (Fed.Cir.1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has thoroughly examined the complaint, plaintiff's response brief filed April 6, 2011 and plaintiff's reply brief filed August 11, 2011 and has attempted to discern all of plaintiff's legal arguments.

#### B. RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). To meet this burden, plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds,* 846 F.2d at 748 (citations omitted).

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2006). This statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc* ) (citations omitted). These include claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The court must determine, at the outset, whether plaintiff's claims fall within the "specified categories of actions brought against the United States" that are within this court's jurisdiction. *Fisher,* 402 F.3d at 1172.

The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Fisher,* 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.* "[T]o come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* (citations omitted). In other words, the source underlying the cause of action must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1009 (Ct.Cl.1967) and citing *Mosca v. United States,* 417 F.2d 1382, 1386 (Ct.Cl.1969)). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992) (citing *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). If, on the other hand, no money-mandating provision supports jurisdiction for a cause of action, this court must dismiss the suit. RCFC 12(h)(3).

#### C. RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002).

When considering a motion to dismiss for failure to state a claim, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court must also inquire whether the complaint meets the plausibility standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted).

## D. RCFC 52.1

■ RCFC 52.1 provides for judgment on the administrative record. To review a motion under RCFC 52.1, the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed.Cir.2005). The court must make fact findings where necessary. *Id.* The resolution of a motion filed under RCFC 52.1 is akin to an expedited trial on the paper record. *Id.*

## E. Decisions of Boards for Correction of Military Records

■ The court does not review the issue before a board for correction of military records *de novo*; rather, this court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed.Cir.2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed.Cir. 2003)). Plaintiff's burden is to show by " 'cogent and clearly convincing evidence' " that the decision of the board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir.1986) (quoting *Dorl v. United States*, 200 Ct.Cl. 626, 633 (1973)). Plaintiff must also overcome the presumption of regularity which attaches to the actions of the AFBCMR. *See Richey v. United States*, 322 F.3d 1317, 1326 (Fed.Cir.2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed.Cir.2001))).

Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases in this circuit the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1156 & n. 12 (Fed.Cir.1983) (citation omitted). The correction board's decision must be sufficiently detailed for the court to ascertain the reasoning behind the denial of benefits to the applicant. *See Buchanan v. United States*, 621 F.2d 373, 383 (Ct.Cl.1980) ("The burden that would be placed upon plaintiff in this court would be almost impossible if the correction board were permitted, in these circumstances, to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error."). The court must also consider whether the correction board has failed to correct "plain legal error." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed.Cir.1993) (citations omitted).

■ The court accords a presumption of regularity and deference to a correction board's denial of relief. *Id.* (noting that "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs" (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir.1992))). However, " 'when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate.' " *Roth v. United States*, 378 F.3d 1371, 1381 (Fed.Cir.2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct.Cl. 1975)). In cases of clear injustice, the board has a moral duty to " 'take steps to grant thorough and fitting relief.' " *Id.* (quoting *Caddington v. United States*, 178 F.Supp. 604, 607 (Ct.Cl.1959)). When a board does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court. *Yee*, 512

F.2d at 1387 (citing *Skaradowski v. United States,* 471 F.2d 627 (Ct.Cl.1973) and *Duhon v. United States,* 461 F.2d 1278 (Ct.Cl.1972)).

## II. Analysis

Defendant's dispositive motions address all of plaintiff's claims. Some do not fall within this court's jurisdiction, or are time-barred. Others are vague and non-specific, and thus fail to state a claim upon which relief may be granted. Plaintiff's recoupment error claims, such as the SSB recoupment overpayment refund claim, were also remanded to the AFBCMR and will be reviewed in the context of the Board's disposition of those claims. Def.'s Reply at 6 n. 1. The court turns to each of plaintiff's claims as they are presented in the complaint.[3]

### A. The SSB Underpayment Claim and Unspecified Recoupment Error Claims (First Paragraph of the Complaint)

Plaintiff's SSB underpayment claim, which somewhat obliquely refers to the net amount of SSB he received and the SSB amount that was recouped from his military retirement pay, can best be understood by comparing his original complaint to his amended complaint. In the original complaint, Mr. Moss noted quite specifically that the net amount of SSB he received in 1992, $71,876.38, reflected a "$5,565.18 error of missing funds." Orig. Compl. ¶ 1. After defendant challenged this claim on statute of limitations grounds, plaintiff amended this paragraph of the complaint to include this rather vague statement:

On November 19, 2004, ... [DFAS] made numerous errors in recoupment of Plaintiff's Military Retirement Pay ... includ[ing] miscalculations in accounting, and unjustifiable deductions.

Compl. ¶ 1.

■ To the extent that the amended complaint carries forth a claim for "missing funds," Orig. Compl. ¶ 1, not paid to Mr. Moss in 1992 because of "unjustifiable deductions," Compl. ¶ 1, such a claim fails because it runs afoul of this court's six-year statute of limitations. It is well-established that claims in this court must be brought within six years of their accrual, and that this time limit is jurisdictional. *See, e.g., Young v. United States,* 529 F.3d 1380, 1384 (Fed.Cir.2008) (citing 28 U.S.C. § 2501 (2006) and *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133–39, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008)). "It is a plaintiff's knowledge of the facts of the claim that determines the accrual date." *Id.* at 1385 (citations omitted). Because Mr. Moss was undoubtedly aware, or should have been aware, of the net amount of his SSB payment in 1992, any underpayment claim accrued in 1992 and therefore could not be filed in this court after 1998. *See id.* at 1384 (noting that a claim accrues when the plaintiff knew or should have known that his claim existed) (citation omitted). Because Mr. Moss filed his complaint in this court in 2009, his SSB underpayment claim is beyond this court's jurisdictional powers to adjudicate.

■ Although the amended complaint might be read to characterize the alleged underpayment error (in 1992) as a recoupment error (in 2004), and thus, perhaps, might appear to avoid this court's statute of limitations for plaintiff's SSB underpayment claim, the court cannot convert a dispute over a net payment of SSB in 1992 to a recoupment dispute in later years.[4] A court's inquiry into the nature of a plaintiff's claim "does not end with the words of the complaint, however instructive they may be, for [the court] still must 'look to the true nature of the action in determining the existence or not of jurisdiction.' " *James v. Caldera,* 159 F.3d 573, 579 (Fed.Cir.1998)

---

3. The court has addressed all of plaintiff's detailed arguments and theories of recovery, whether presented in the complaint or in subsequent briefing. Only these detailed arguments have been addressed in this opinion. To the extent that plaintiff made a brief allusion to other legal arguments or theories of recovery, the court has considered them but did not find them persuasive.

4. A true recoupment error claim would be one alleging that the Air Force had recouped more than the amount stated in the SSB agreement. Plaintiff's SSB recoupment overpayment refund claim appears to allege that an error of that nature occurred.

(quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed.Cir.1994)). Because plaintiff's claim is founded on the allegedly incorrect amount of net SSB received by Mr. Moss in 1992, the fact that DFAS later recouped an amount consistent with the total SSB amount agreed to by Mr. Moss and the Air Force in 1992 (and did not lower the SSB total recoupment amount in 2004 to account for an alleged underpayment error in the net SSB paid to Mr. Moss in 1992) does not convert his SSB underpayment claim into a recoupment error claim.[5] Because the only specific claim that can be discerned in the first paragraph of the amended complaint is one for the 1992 underpayment of the net SSB due Mr. Moss, that claim is time-barred and dismissed for lack of jurisdiction.

As to any other recoupment errors that might be alleged by plaintiff in the first paragraph of the amended complaint, the court notes that any such claims are vague and unsupported by factual foundation. *See* Compl. at 1 (asserting that the government failed "to insure the letter of the Law was followed as prescribed by" various public laws and regulations); *id.* ¶ 1 (asserting that DFAS "made numerous errors in recoupment of Plaintiff's Military Retirement Pay ... includ[ing] miscalculations in accounting, and unjustifiable deductions"). The unspecified nature of the recoupment errors thus presented does not meet the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009):

> [A properly pleaded claim] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of

a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Id.* at 1949 (internal quotations and citations omitted). Thus, any portion of the first paragraph of the complaint not dismissed for lack of jurisdiction is dismissed for failure to state a claim upon which relief may be granted.[6]

### B. The Misdirected SSB Recoupment Claim (Second Paragraph of the Complaint)

This claim, too, is best understood by comparing the original complaint to the amended complaint. Initially, Mr. Moss asserted that

> Defendant should have already be[en] deducting [recoupment from] disability payments and applying them to the reduction of Plaintiff['s] SSB debt ... until Plaintiff['s] SSB debt had been repaid, ... resulting in a total of approximately $3,860.00 being deducted from disability payments. Therefore, [if the law had been correctly applied], Defendant would not be in a position on November 19, 2004 to recoup $101,896.78 from Plaintiff's retirement pay.

Orig. Compl. ¶ 2. Plaintiff's amended complaint asserts that

> On August 1, 2004, Plaintiff was denied due process under the law by failure of [DFAS] and [DVA] to properly apply [10 U.S.C. § 1174(h)(2) (2006) ] in the disposition of Plaintiff's retirement pay and disability pay.

Compl. ¶ 2. As plaintiff points out, section 1174 and 38 U.S.C. § 5305 (2006) have relevance to SSB recoupment and "decisions of

---

5. Plaintiff's claim regarding the total amount of SSB recouped is clearly founded on his challenge to deductions made from his SSB in 1992. *See* JSR at 6–8; Pl.'s Reply at 15–16.

6. Plaintiff asks that the court not dismiss his vague SSB recoupment error claims and instead "order the Defendant to produce and provide a complete record of the SSB transactions." Pl.'s Resp. at 4. The court has reviewed the administrative record in this case and finds that the only substantive controversy that emerges, that of the amount of net SSB paid Mr. Moss in 1992, is time-barred. Even if that controversy were not time-barred, defendant's argument supporting

the accuracy of the net SSB payment received by Mr. Moss in 1992 is persuasive. *See* JSR Ex. 1 at 1; AR–III at 94. Although the record is not perfectly comprehensive, it provides adequate detail to support the government's contention that Mr. Moss received the correct amount of net SSB in 1992, and that DFAS recouped the correct amount of total SSB. For this reason, the court would necessarily grant defendant judgment on the administrative record on all of plaintiff's unspecified SSB recoupment error claims, if these claims were not dismissed under RCFC 12(b)(6). Plaintiff's request is thus denied as moot.

fact or law arising in the administration of a statute for veterans' benefits." Pl.'s Resp. at 4. The court notes that Title 38 of the United States Code indeed concerns the administration of veterans' benefits, and that plaintiff's misdirected SSB recoupment claim challenges the administration of his veterans' benefits.

■ Defendant argues that the administration of veterans' benefits is beyond review in this court. *See* Def.'s Mot. at 10–14; Def.'s Reply at 2–3; Def.'s Sur–Reply at 3–5. This is indeed the law. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Cunningham v. United States,* 549 F.2d 753, 766 (Ct.Cl.1977) (noting that "decisions of the VA on any question of law or fact concerning a claim for benefits or payments [are] final and conclusive and not subject to judicial review, with certain exceptions not here pertinent") (citation omitted); *Sullivan v. United States,* 46 Fed.Cl. 480, 487 (2000) (noting that "this court is without jurisdiction to review those benefit-entitlement determinations by the VA, which is solely vested in the United States Court of Veterans Appeals") (citations omitted). In plaintiff's reply brief, Mr. Moss appears to concede that this court is not the proper forum for challenges to the actions of DVA as regards the recoupment of his SSB, states that he has sought relief from DVA as to this claim, and "request[s] [that] the Court dismiss[ ] that portion of the [misdirected SSB recoupment claim] involving the DVA." *See* Pl.'s Reply at 9. Thus, plaintiff's misdirected SSB recoupment claim must be dismissed for lack of jurisdiction.

Plaintiff nonetheless argues that a portion of this claim concerns the actions of DFAS, not DVA, and that this portion is not ripe for dismissal. *See* Pl.'s Reply at 9–12. The court disagrees. As plaintiff has noted, it is Title 38 that governs the interaction between disability compensation and retirement pay in the context of SSB recoupment. *See* Pl.'s Resp. at 5 (stating that 38 U.S.C. § 5305 "describe[s] how both [DFAS] and the DVA should go about recouping retirement pay and disability pay when the member is entitled to both types of pay"). Furthermore, as defendant points out, it is the implementing regulations of Title 38 which govern the recoupment of SSB from disability compensation. *See* Def.'s Mot. at 10 (citing 38 C.F.R. § 3.700(a)(5) (2010)). The agency action challenged by plaintiff, notwithstanding the description of this claim in the amended complaint, is the DVA decision to forego any attempt at recoupment of plaintiff's SSB from his disability compensation between 2004 and 2007. *See* Pl.'s Resp. at 5 (asserting that the misdirected SSB recoupment claim is founded on plaintiff being "deprived of disability pay from August 1, 2004 until June 1, 2007" and the fact that no disability pay during this period "was deducted from his SSB debt"). That DVA benefits decision is not reviewable in this court.

## C. The SSB Recoupment Overpayment Refund Claim (Third Paragraph of the Complaint)

When Mr. Moss paid a lump sum to DFAS in August 2007, there is no dispute that his payment exceeded the remaining SSB amount that the United States sought to recoup from plaintiff. The only dispute is whether Mr. Moss should have been refunded $5284.28, as plaintiff claims, or the $3387.49 that DFAS sent to his credit union. Defendant seeks judgment on the administrative record for this claim.

Plaintiff asserts that he relied on the retirement account statements he received to calculate the lump-sum payment he sent to DFAS. Compl. ¶ 3. Later, Mr. Moss "used documents furnished by the Defendant to question" the apparent discrepancy between the refund he received and the refund he believed was due. *Id.* Plaintiff now asserts that he "has asked Defendant to explain this discrepancy, but Defendant has failed to respond." *Id.*

In defendant's view, the illusory discrepancy has been fully explained to Mr. Moss. According to the government, the statements sent by DFAS to Mr. Moss did not show the full amount of the SSB that would need to be recouped, because his SSB amount was $101,896.78, more than the $99,999.99 display limit of the computerized SSB records at DFAS. Def.'s Mot. at 20–21. The statements sent to Mr. Moss thus did not reveal an

additional $1896.79 of SSB that remained to be recouped. *Id.* at 21. The difference between $5284.28 and $3387.49 is exactly $1896.79, and defendant argues that plaintiff should now accept that the DFAS computerized record limitation adequately accounts for his refund being in the amount of $3387.49, rather than in the amount of $5284.28.

In plaintiff's initial response to defendant's argument, plaintiff noted that the computerized record limitation explanation was only recently communicated to Mr. Moss. Pl.'s Resp. at 6. Plaintiff also noted that it is the fault of the government that he received "mistaken statements." *Id.* Plaintiff argued that judgment should be denied defendant because "the record is in error and shows an under[-]reported figure." *Id.* Plaintiff also expressed a desire to have defendant file more extensive DFAS accounting records regarding the SSB recoupment. *Id.* at 7.

Because plaintiff had presented his various SSB recoupment claims to the AFBCMR, the court ordered defendant to file a full administrative record of the proceedings before the Board. *See* Order of June 16, 2011, at 1–2. The court's remand to the AFBCMR asked the board to consider all of plaintiff's claims, and to determine whether the accounting of his SSB recoupment was accurate:

> [The Air Force shall determine] [w]hether any of the accounting, recoupment, collection, calculation, withholding and/or deduction errors alleged by Mr. Moss to have been committed by DFAS did indeed occur. . . .

Order of September 21, 2010, at 4. The court now turns to the Board's ruling on plaintiff's SSB recoupment overpayment refund claim, and to the Board's consideration of any other unspecified recoupment errors that might have been committed by DFAS.

■ It is clear that the Board reviewed and understood plaintiff's SSB recoupment overpayment refund claim. The AFBCMR considered plaintiff's specific allegation that he should have been refunded $5284.28, instead of $3387.49. *See* AR–III at 9, 12, 28, 77, 99. The Board found that the explana-

tion for the refund figure of $3387.49 "ma[de] sense." *Id.* at 9. The AFBCMR concluded that "the evidence presented did not demonstrate the existence of material error or injustice." *Id.* at 14. The Board also stated, however, that "the requested remedy is not within the Board's authority in any event." *Id.* at 9.

To the extent that the Board ruled on plaintiff's SSB recoupment overpayment refund claim, which is somewhat doubtful in that the Board appears to have considered DFAS accounting errors to be beyond its jurisdiction to correct, the court finds that the Board's decision was not arbitrary or capricious, and that the Board's decision was supported by substantial evidence. The DFAS explanation considered by the Board is detailed and shows that the lump-sum payment sent by plaintiff's credit union "resulted in an excess of $3,387.49," and that this amount was refunded to Mr. Moss. AR–III at 34. It was not arbitrary or capricious for the AFBCMR to rely on the calculations provided by DFAS.

Although the fuller explanation of the overpayment refund provided in this litigation, that of the display limitation of $99,999.99 in computerized SSB records at DFAS, is even more persuasive, the AFBCMR rationally concluded that DFAS had correctly calculated the refund due Mr. Moss.[7] Mr. Moss had contended before the AFBCMR that his SSB recoupment balance was lower, at the time plaintiff's lump-sum payment was received, than the figure later cited by DFAS. *See* AR–III at 28, 35–36. The Board nonetheless rationally preferred the calculations provided by DFAS as more persuasive on this issue, and the Board's decision on this claim, if indeed the Board entertained this claim, survives the arbitrary and capricious standard of review applicable here.

In the alternative, to the extent that the AFBCMR declined to rule on plaintiff's SSB recoupment overpayment refund claim, a *de novo* review of the administrative record

---

7. Mr. Moss had alluded to the $99,999.99 "computer limitation" at DFAS in one of his submis-
sions to the Board. AR–III at 82.

compels judgment on this claim for the government. DFAS has fully explained its rationale for setting the refund amount at $3387.49. JSR Ex. 2. Plaintiff's arguments based on the statements he received from DFAS fail to provide a more credible calculation of the appropriate refund amount due Mr. Moss. In his reply brief, Mr. Moss raises an allegation that laws governing debt collection were violated by DFAS. Pl.'s Reply at 21. These allegations are vague and are not persuasive, in light of the facts in the record before the court. For all of these reasons, defendant is entitled to judgment on the record on plaintiff's SSB recoupment overpayment refund claim.

As to the other alleged recoupment errors that were brought to the AFBCMR's attention by Mr. Moss, the Board declined to provide any relief, while noting at the same time that such errors were beyond its powers to correct. AR–III at 12. To the extent that the Board ruled on plaintiff's requests for relief, it noted that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of error or injustice." *Id.* The AFBCMR commented that "for most of [plaintiff's claims], the applicant has not demonstrated an error in either determining entitlements (such as the proper construction of the disability and retirement pay laws governing his unusual situation) or in calculating the amounts due" him. *Id.* If this indeed constitutes a decision of the Board, it survives arbitrary and capricious review, because the court finds that substantial evidence in the administrative record supports the conclusions of the AFBCMR.

In the court's view, however, the Board largely considered the recoupment errors alleged by Mr. Moss to be a matter beyond its jurisdiction, and for this reason, there is no substantive decision of the AFBCMR to be reviewed by this court. The Board's legal advisor suggested that plaintiff's dispute was with DFAS, and noted that inaccurate payment records could not be corrected by the AFBCMR in most instances. *See* AR–III at 77 n. 4 ("For accounting discrepancies a member must continue to make his/her case with DFAS."). The Board therefore declined "to issue what would amount to a binding declaratory judgment as to what entitlements the applicant is due ... based upon [the] AFBCMR's ... accounting analysis"). *Id.* at 12. Thus, plaintiff's AFBCMR application and this court's remand did not produce a Board decision subject to arbitrary and capricious review by this court. *See Holt v. United States,* 64 Fed.Cl. 215, 219–20 (2005) (declining to review the rejection by the Board for Corrections of Naval Records (BCNR) of a plaintiff's claims where the BCNR "declined to even consider her case"). As noted elsewhere in this opinion, plaintiff's claims must be dismissed for lack of jurisdiction, for failure to state a claim upon which relief may be granted, or on the administrative record, and not, primarily, because the AFBCMR's rejection of those claims survives arbitrary and capricious review.

### D. The Improper State Tax Recoupment Claim (Fourth Paragraph of the Complaint)

Again, a comparison of the original complaint and the amended complaint is instructive. Mr. Moss first asserted that

[t]he Defendant ... withh[e]ld state taxes from the SSB in 1992, and later recouped the money that was withheld for State taxes from the Plaintiff['s] 2007 income. The Mississippi State Tax Commission claims expiration of [the] "Statu[t]e of Limitation" [bars] any refund. The Plaintiff contend[s] his rights ... ha[ve] been violated by the Defendant ... withhold[ing] Taxes that are subject to be recouped, without consideration for the Plaintiff['s] [in]ability to retrieve a refund on income that has been recouped.

Orig. Compl. ¶ 4. In plaintiff's view, once defendant recouped the total SSB amount, including an amount withheld for state taxes, and he was unable to obtain a refund of those state taxes because of the state's statute of limitations, the SSB recoupment scheme became unlawful. Thus, in the amended complaint, Mr. Moss asserts that

[o]n November 19, [2004,] Defendant violated Plaintiff's 5th and 14th amendment rights by deducting from Plaintiff['s] retirement pay an amount to replace an

amount previously withheld to pay State income tax.

*Id.* ¶ 4.

■■■■ This claim, too, is beyond the court's jurisdiction. First, the due process provisions of the Fifth and Fourteen Amendments do not provide a money-mandating source of law for plaintiff's claim in this court. *E.g., LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995). Second, this claim accrued in 1992, when the terms of the SSB agreement indicated that state taxes, if applicable, would be withheld, and that the total amount of SSB would be recouped from the military retirement pay, if any, received by Mr. Moss. *See* AR–I at 54. Any claim based on the fact that state taxes were withheld from plaintiff's SSB in 1992, even if such a claim is characterized as a challenge to the 2004 recoupment of the amount withheld for state taxes, is time-barred because it accrued in 1992. Thus, plaintiff's improper state tax recoupment claim must be dismissed for lack of jurisdiction.

Plaintiff, in his reply brief, asserts that he also challenges the specific amount of state taxes withheld from his pay and SSB in 1992. Pl.'s Reply at 14–15. This claim, too, is time-barred, because any error in the state tax withholding in 1992 should have been known to plaintiff at that time. *See, e.g., Martinez v. United States,* 333 F.3d 1295, 1319 (Fed. Cir.2003) (*en banc*) (holding that accrual of a claim is not suspended if "the claimant knew or should have known that the claim exist-

ed") (citations omitted). The court notes that plaintiff submitted to the AFBCMR a copy of his 1992 tax form which shows his total state tax withholding amount. AR–III at 58. The form reports Mr. Moss's 1992 income incorrectly (it is doubled) and his state tax withholding incorrectly (it is also doubled). *Id.* at 58–61. Such a gross error should have been known to plaintiff when he received his 1992 W–2, and his incorrect state tax withholding claim therefore accrued more than six years before he filed suit in this court.[8] Thus, plaintiff's challenge to the quantum of state tax withholding (and the quantum of the subsequent recoupment of the amount of SSB withheld for state taxes) is dismissed for lack of jurisdiction.[9]

## CONCLUSION

All of plaintiff's claims except his SSB recoupment overpayment refund claim are dismissed for lack of jurisdiction or for failure to state a claim upon which relief may be granted, as explained above. As to his SSB recoupment overpayment refund claim, the court grants the government judgment on the administrative record. Because plaintiff has not prevailed on any of his claims, no compensatory, general or specific damages may be awarded in this suit, and the court cannot award fees or costs to Mr. Moss. Furthermore, because the record before the court is adequate to rule upon plaintiff's claims, the court denies as moot plaintiff's request that defendant be required to pro-

---

8. The record shows that Mr. Moss later asserted that the State of Mississippi did not receive an inappropriately doubled amount of withheld income tax. AR–I at 115. On this record, it is impossible to discern whether DFAS withheld too much state income tax, or merely reported to plaintiff, erroneously, that too much state income tax had been withheld. In any case, this claim is time-barred.

9. Mr. Moss has consistently alleged that the amount of state income tax withheld from his SSB was $4075.87 and the record supports a finding that $4075.87, or four percent, is an appropriate amount of state tax on the total SSB amount. *See, e.g.,* Orig. Compl. ¶ 1; AR–III at 59–60. *But see* AR–I at 141 (suggesting that $5095, or five percent, might have been the proper amount of withholding on the total SSB amount). Thus, if this claim were not time-barred, the court would grant judgment on the

administrative record for defendant on any claim that DFAS withheld too much of plaintiff's total SSB for state income tax (and recouped that allegedly excessive amount in later years). If there was an error committed by DFAS in 1992 regarding the amount of income reported to the State of Mississippi and the state income taxes withheld on plaintiff's total income (SSB and non-SSB income), any claim based on such an error is also time-barred. *See* AR–I at 115 (2009 email from Mr. Moss discussing the 1992 state income tax withholding figure given to him by the Mississippi State Tax Commission); *id.* at 141–42 (minutes of the Mississippi Tax Board of Review meeting in 2007 discussing the amount of plaintiff's SSB that should have been withheld in 1992); AR–III at 58–61 (1992 W–2 form and letter from DFAS discussing the doubling error in state income and state income tax withholding).

duce more complete payment and recoupment records. The court is not unsympathetic to the disruptions Mr. Moss experienced in his retirement income, but no relief is due plaintiff under the laws binding on this court.

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Partial Motion to Dismiss and Motion for Judgment on the Administrative Record filed April 26, 2010, is **GRANTED;**

(2) Plaintiff's Cross–Motion in Response to Defendant's Partial Motion to Dismiss and Motion for Judgment on the Administrative Record, filed April 6, 2011, is **DENIED** as moot;

(3) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, as follows:

    (a) Plaintiff's SSB underpayment claim, his misdirected SSB recoupment claim, and his improper state tax recoupment claim are all **dismissed without prejudice,** for lack of jurisdiction;

    (b) Plaintiff's recoupment overpayment refund claim is **dismissed with prejudice** on the basis of judgment awarded defendant upon review of the administrative record;

    (c) Plaintiff's unspecified recoupment errors claim is **dismissed with prejudice** for failure to state a claim upon which relief may be granted; and

(4) No costs.